STATE of Minnesota, Respondent,

v.

Martin Estrada PEREZ, Appellant.

No. C7–93–1470.

Supreme Court of Minnesota.

April 29, 1994.

John Stuart, Minnesota Public Defender, Melissa Sheridan, Asst. Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Asst. Atty. Gen., St. Paul, for respondent.

John M. Stuart, State Public Defender, Kathi Lynn Leicinger, Sp. Asst. Public Defender, St. Paul, for appellant.

Michael O. Freeman, Hennepin County Atty., Stephen L. Redding, Asst. Hennepin County Atty., Minneapolis, and Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul, for respondent.

OPINION

KEITH, Chief Justice.

Defendant, Martin Estrada Perez, appeals from judgment of conviction of first-degree murder, complaining primarily about the admission of DNA evidence and statements by the prosecutor in closing argument. We affirm.

On November 17, 1991, police were called to a first-floor four-bedroom apartment at 1718 Fremont Avenue South in Minneapolis, where the body of the victim, Jean Broderick, had been discovered in her bedroom. Cause of death was asphyxiation due to airway obstruction and strangulation. The medical examiner found evidence that Broderick had been sexually assaulted. This included the finding of semen on the inner side of her left buttocks. Several bloodstained items and a pubic hair were also collected at the crime scene.

A search of a DNA sex offender database isolated defendant as a possible source. Further DNA testing (6 autorads, 6 probes) showed that defendant's DNA profile matched the DNA profile of the semen and bloodstains from the unknown source. Forensic scientists also determined that defendant's pubic hair could not be distinguished from "foreign" pubic hair found on the victim and that defendant had the same rare PGM type (one half of one percent of the people in the population have it) as the "foreign" blood found at the crime scene.

A jury found defendant guilty of first-degree murder. The trial court excluded evidence of the probability that a randomly selected person would have the same DNA profile as that of the DNA samples from the unknown source but admitted (a) the testimony of one of the state's experts that a 6–loci match is extremely rare and the testimony of another of the state's experts that there was not a significant chance that another person was the source (b) the testimony of all three state's experts that, to a reasonable medical/scientific certainty, defendant was the, source of the unknown DNA samples found at the scene, (c) the testimony of a state's expert that when he compared defendant's DNA with the DNA of 3,500 other men in a DNA database, he found one person who matched at two loci but no one else who matched at more than two loci, and (d) the testimony of a defense expert that false positive matches do occur.

Other evidence connecting defendant to the killing included: (a) testimony by defendant's roommate that defendant sometimes left the house late at night or early in the morning and that defendant told him he liked to enter apartments that he found unlocked (the victim and her roommates occasionally left their apartment unlocked); (b) *Spreigl* evidence that in December of 1984 defendant had choked a woman and attempted to rape her outside her South Minneapolis apartment at 1:30 a.m., (c) eyewitness *Spreigl* testimony identifying defendant as the man who entered an apartment at the same address, 1718 Fremont, at 3:20 a.m. on August 22, 1991, without permission of the male tenant; (d) testimony by the landlord at 1718 Fremont that in mid-August of 1991 he found a man in the building without permission and ordered him to leave. He later identified defendant as someone he had seen around, and identified defendant's boots as the kind he remembered the intruder wearing; (e) *Spreigl* testimony that at 6:45 a.m. on November 28, 1991, ten days after the rape/murder, defendant entered the Minneapolis apartment of another woman, whose screams woke her son, who in turn threw defendant out.

The jury found defendant guilty as charged and the trial court sentenced him to life in prison without possibility of parole.

Defendant, represented by the state public defender, complains specifically about the admission of testimony that, to a reasonable scientific certainty based on comparison of defendant's DNA with the DNA in the semen and blood found at the scene, defendant was the source of the DNA samples recovered at the crime scene. This specific contention is answered by our decision in *State v. Bloom*, 516 N.W.2d 159, filed herewith.

There is no basis for granting defendant a new trial on the basis of the prosecutor's closing argument.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.